UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NADEGE APOLEON,

                Plaintiff,

-against-

PAMELA BONDI,
Attorney General of the United States,

                Defendant.

**MEMORANDUM AND ORDER**
Case No. 23-CR-2574 (FB) (TAM)

*Appearances:*
*For the Government:*
VINCENT LIPARI
Assistant United States Attorney
610 Federal Plaza, 5th Floor
Central Islip, NY 11722

*For the Defendant:*
JOSHUA PEPPER
30 Wall Street, 8th Floor
New York, NY 10005

**BLOCK, Senior District Judge:**

Plaintiff Nadege Apoleon brings suit against the Federal Bureau of Prisons ("BOP"), an agency of the United States Department of Justice, for alleged violations of Title VII and the Rehabilitation Act. Plaintiff alleges that she was denied a promotion and subsequently terminated because of (1) discrimination on the basis of race, color, and national origin, (2) discrimination on the basis of disability, and (3) retaliation for previous complaints of discrimination.[1] Pending before the Court are both parties' motions for partial summary judgement.[2]

---

[1] These motions refer to three of the seven counts raised in the amended complaint: count five alleges employment discrimination on the basis of race in violation of Title VII, 42 U.S.C. § 2000e-16, count six alleges retaliation against a federal employee for engaging in protected activity in violation of Title VII, *Id.*, and Count Seven alleges employment discrimination on the basis of disability in violation of the Rehabilitation Act. 29 U.S.C. § 794 et seq.

[2] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Pamela Bondi is substituted for her predecessor, Merrick Garland, as Attorney General of the United States.

1

For the following reasons, both motions are **DENIED**.

**I**

The following facts are essentially undisputed.

Apoleon is a Black Haitian-American who has been a practicing psychologist since 2008, when she received her Doctorate in Psychology. Apoleon Decl. ¶ 2, ECF No. 34. Beginning in 2010, she worked as a staff psychologist for the BOP at the Metropolitan Detention Center ("MDC") in Brooklyn, NY. *Id.* at ¶ 3. In this role she provided mental health treatment to the facility's inmates. *Id.* at ¶ 5.

When she was hired the job posting made clear that all prison facility employees are officially considered "law enforcement" and that all employees are required to maintain physical capabilities and undergo training consistent with this role. *Id.* at ¶ 6. The Position Description for BOP Staff Psychologist emphasizes that "staff correctional responsibilities precede all others required by this position and [include] . . . responding to emergencies and institution disturbances . . . and assuming correctional officer posts when necessary. . . . Incumbent must be physically and mentally able to perform efficiently the essential functions of the position, including restraining, apprehending and physically controlling inmates in emergency situations." ECF No. 40-3 Ex. B. Specifically, all BOP employees must be able to "perform self-defense moves, run an extended distance, drag a body, carry a stretcher with one other person, or lift over 25 pounds." Apoleon Decl. ¶ 8. Apoleon claims, and the Defendant does not refute, that in her almost nine years of working at MDC Brooklyn she was never required—nor asked—to perform any of the above actions. *Id.* Furthermore, although she was regularly in rooms alone with inmates, she was never assaulted, and all potential conflicts were easily deescalated. Apoleon Tr. 62:9–10, ECF No. 35-1

2

On January 4, 2019, Apoleon was injured in an elevator accident at MDC Brooklyn.[3] Apoleon Decl. ¶ 13. To this day, the event's lingering health effects continue to cause the Plaintiff pain and discomfort in her shoulders, neck, and back. *Id.*; Apoleon Tr. 70:11–71:9. These injuries limit Apoleon's ability to do major life activities, including sitting and standing for extended periods, walking and running, and lifting heavy objects. Apoleon Decl. ¶ 40. Because of these physical limitations, Apoleon was given a Limited Light Duty ("LLD") assignment under the BOP's Worker Compensation Program, which temporarily excused her from responding to emergencies and reduced her work schedule from eight to four hours per day. *Id.* at ¶ 41; Def.'s Mem. in Support of Mot. for S.J. ("Def.'s Mem.) at 4, ECF No. 40-1. Plaintiff was able to perform her job satisfactorily while on LLD, even while working half as many hours as her coworkers, as testified by her manager Kari Schlessinger. Schlessinger Depo. 25:4–26:20, ECF No. 35-3.

On January 6, 2022, after three years on LLD, Apoleon submitted to a fitness-for-duty examination wherein the examiner concluded that further improvement of her condition was unlikely given her course of treatment. Apoleon Decl. Ex. 2, ECF No. 34-2. Concluding that Apoleon's injuries were permanent and that she was "unable to perform the functions which are essential to [her] law enforcement position," the MDC's human resources manager initiated a search for a reasonable accommodation reassignment within the Department of Justice. *Id.* at Ex. 3. On August 16, 2022, after concluding that no reasonable accommodation was possible, and no

---

[3] Because the current motions address only counts five through seven, which pertain to Apoleon's 2022 termination, the Court will not describe the events connected to the other counts (namely, Apoleon's repeatedly being denied for promotions).

3

other position was available, Apoleon's position as a staff psychiatrist was terminated by MDC Warden Milton Washington. *Id.* at Ex. 8.

Apoleon moves for summary judgement on count seven, alleging that she was terminated on account of her disability in violation of the Rehabillitation Act. Pl.'s Mot. Defendant moves for summary judgement on counts five, six and seven, alleging that none of the Plaintiff's claims' *vis a vis* her termination can survive because BOP had a legitimate, nondiscriminatory reason for terminating her employment; namely that her disability rendered her unable to perform law enforcement duties essential to the position. Def.'s Mem. at 24–27.

## II

A court should grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (A dispute as to a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")

The movant bears the burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court must resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989).

Summary judgement is appropriate in discrimination cases. *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("[T]he salutary purposes of summary judgment—avoiding protracted,

4

expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation."); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) ("[T]rial courts should not treat discrimination differently from other ultimate questions of fact.") (quotation omitted).

The familiar, three-part *McDonnell Douglas* burden-shifting framework governs Plaintiff's Title VII and Rehabilitation Act claims. *See Castro v. City of New York*, 24 F. Supp. 3d 250, 260 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Under this framework: (1) Plaintiff must establish a prima facie case of discrimination; (2) Defendant must produce an explanation to rebut the prima facie case by showing that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason"; and (3) Plaintiff must show pretext by demonstrating that intentional discrimination—or retaliation—and not the employer's proffered explanation, was the true reason for the adverse employment action. *Id*. at 260.

To establish a prima facie case of discrimination, Plaintiff must show that (1) her employer is subject to the Rehabilitation Act; (2) she was disabled within the meaning of the Act; (3) she was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability. *See e.g. Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020). The parties agree that Apoleon satisfies the first, second, and fourth elements of a prima facie case of discrimination. The motions before the Court therefore hinge on whether the Plaintiff was qualified to perform the essential duties of a BOP staff psychologist, with or without an accommodation.

Determining whether any particular duty may be fairly considered essential is a "fact specific exercise to be made on a case by case basis." *Sharp v. Abate*, 887 F. Supp. 695, 698

5

(S.D.N.Y. 1995). Factors to be considered include, but are not limited to: "(i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; . . . [and] (vii) The current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3); *see Jones v. N.Y.C. Transit Auth.*, 838 F.App'x 642, 645 (2d Cir. 2021).

Because no one factor is determinative, even if certain duties are defined as essential by the employer or mandated by written job descriptions, *see* factors (i) and (ii) *supra*, they may be outweighed by the realities of the job. *See Stone v. City of Mount Vernon*, 118 F.3d 92, 100 (2d Cir. 1997) ("[T]he evidence that neither the past nor the incumbent firefighters assigned to those bureaus have ever been requested to engage in a fire-suppression activity suggests that it would be entirely permissible for a factfinder to infer that the ability to engage in fire-suppression activities is marginal to [those] positions."); *see also Shannon v. Verizon N.Y.*, Inc., 519 F. Supp. 2d 304, 309 (N.D.N.Y. 2007) (rejecting employer's position that being able to lift or move 100 pounds was essential for field technicians because it did "not correspond to the actual requirements of the position.") The duties of a psychologist are anathema to the physical aspects of the defendant's job description.

### III

Neither party, therefore, is entitled to summary judgment. There are sharp factual disputes as to the realities of the job of a prison psychologist and whether, based on those realities, defendant could have provided a reasonable accommodation. Plaintiff has plausibly shown in both her own experience, and the experience of other staff psychologists, that there are rarely, if

ever, events that require MDC psychologists to perform law enforcement duties. Apoleon Decl. ¶ 8; Schlessinger Depo. 14:23–25; *see* 29 C.F.R. § 1630.2(n)(3)(iii), (vii).

The cases Defendant cites in support of its motion reinforce this conclusion. They cite bountiful out-of-circuit caselaw for the proposition that law enforcement duties are essential functions for those working in correctional facilities because of the "constant, unpredictable and life-threatening hazards of [the] prison environment." Def.'s Mem. at 17; *e.g., Tate v. Dart*, 51 F.4th 789 (7th Cir. 2022) ("[E]ven though violent workplace emergencies might be infrequent, . . . the ability to respond to violent emergencies is an essential function for correctional lieutenants."); *see Myers v. Gwinnett Cnty.*, Case No. 16-CV-824, 2017 U.S. Dist. LEXIS 215371 at *23 (N.D. Ga. July 20, 2017) ("[C]orrections officers and other employees in public safety positions must be able to perform job functions that require physical exertion."); *see also Dargis v. Sheahan*, No. 02 C 6872, 2005 WL 946909, at *6–8 (N.D. Ill. Mar. 25, 2005), aff'd, 526 F.3d 981 (7th Cir. 2008) ("Fortunately, correctional officers are not often called upon to respond to a riot or escape; nevertheless, the fact that such crises occur infrequently does not make the ability to respond to them any less essential").

However, these cases, as well as others cited by Defendant, refer to actual correctional officers or comparable law enforcement positions. While the staff psychologist position is *technically* a law enforcement position, reasonable minds could differ as to whether law enforcement duties are essential, or in fact marginal, to the position. *See* 29 C.F.R. § 1630.2(n)(1). Moreover, courts in the Second Circuit have repeatedly questioned whether physically demanding law enforcement duties are essential functions for correctional officers. *See Sharp*, 887 F. Supp. at 698 (guarding prisoners is not *necessarily* an essential function of prison guards); *Kronstein v. Albany Cnty.*, Case No. 21-cv-543, 2023 U.S. Dist. LEXIS 268893,

7

at *24-25 (N.D.N.Y. Sept. 22, 2023) (rejecting argument that contact with inmates was an essential function of a corrections officer); *cf. Stone*, 118 F.3d at 99 (reversing summary judgement where the district court gave undue weight to the title of firefighter when determining whether fighting fires was an essential function of the job). If it is unclear whether these duties are essential *for correctional officers*, it is certainly questionable whether they are essential for staff psychologists in correctional institutions.

## CONCLUSION

The Court holds that neither party has presented sufficient evidence to show that there are no genuine issues of material fact. Whether Apoleon was "otherwise qualified" for the position of BOP staff psychologist—and whether a reasonable accommodation exists for her condition—are questions best left for a jury. Both motions for partial summary judgment are therefore DENIED.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　 /S/ Frederic Block　　　　

　　　　　　　　　　　　　　　　　　　　　　　　　　　FREDERIC BLOCK
　　　　　　　　　　　　　　　　　　　　　　　　　　　Senior United States District Judge

Brooklyn, New York
September 16, 2025